Paul J. Hickey
Hickey & Evans, LLP
1800 Carey Ave., Suite 700
P.O. Drawer 467
Cheyenne, WY 82003
Telephone: (307) 634-1525
Facsimile: (307) 638-7335

Alan L. Sullivan (*Pro Hac Vice Admission Pending*)
Jared C. Fields (*Pro Hac Vice Admission Pending*)
Snell & Wilmer L.L.P.
15 West South Temple, Suite 1200
Gateway Tower West
Salt Lake City, Utah 84101-1531
Telephone:  (801) 257-1900
Facsimile:  (801) 257-1800

Attorneys for Plaintiff

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

JAN 23 2012

Stephan Harris, Clerk
Cheyenne

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| Northwest Pipeline GP, a Delaware general partnership, <br><br> Plaintiff, <br><br> vs. <br><br> Chevron Mining, Inc., a Missouri corporation, <br><br> Defendant. | **COMPLAINT** <br><br> Case No. __12CV021F__ |

Plaintiff Northwest Pipeline GP ("Northwest") hereby complains of defendant Chevron

Mining, Inc. ("Chevron") and for cause of action alleges:

14141027.5

## SUMMARY OF CLAIMS

1.      In this case, Northwest sues Chevron to recover the costs it has incurred and will incur in monitoring, isolating, stabilizing, by-passing, and relocating a segment of two interstate natural gas pipelines it owns and operates in the vicinity of Kemmerer, Wyoming (hereinafter "pipelines" or "pipeline system").

2.      Northwest began its work to monitor, isolate, stabilize, by-pass and relocate its pipelines after learning of land movement beneath and surrounding the pipelines in the summer of 2011.  The land movement was caused by Chevron's coal mining activities in an area immediately adjacent to the pipeline system.  Northwest believes that Chevron carelessly mined property adjacent to the pipeline system, with the result that the earth surrounding Northwest's pipelines cracked and developed deep fissures emanating from Chevron's mine.  Chevron's actions also caused a section of the nearby State Highway 30 to buckle and crack.  As a direct result of Chevron's conduct, the integrity of the high pressure natural gas pipeline system was compromised, requiring Northwest to isolate and reduce stress on the pipelines, install land movement detection equipment, design, engineer and construct a temporary bypass of the pipelines, and design, engineer, and construct a permanent relocation of the two pipelines and ancillary equipment.

3.      Northwest advised Chevron that it held Chevron solely responsible for the damage to the pipeline system and demanded that Chevron agree to reimburse Northwest for the costs of taking the actions summarized above.  Chevron has refused to do so.

4.      In the causes of action set forth below, Northwest claims (a) that Chevron is liable to Northwest under the federal Surface Mining Control and Reclamation Act, 30 U.S.C. § 1270(f), and the Wyoming Surface Mining Act, Wyo. Stat. Ann. §35-11-902(o), which specifically protect natural gas pipelines from surface mining activities in Wyoming; (b) that Chevron is liable to Northwest for violation of the latter's common law right to lateral support; (c) that Chevron is liable to Northwest for private nuisance resulting from its mining activities;

(d) that Chevron is liable to Northwest for public nuisance arising from Chevron's impairment of the public's right to uninterrupted natural gas service and damage to the public highway; and (e) that Northwest should obtain declaratory and injunctive relief to prevent Chevron from interfering with Northwest's pipeline facilities in the future.  In this complaint, Northwest alleges that it is entitled to declaratory relief, injunctive relief and damages based on a strict liability standard.  If the Court determines that one or more of Northwest's claims require proof of negligence, Northwest alleges that Chevron failed to exercise reasonable care in conducting its operations and in failing to adopt reasonable precautions that would have prevented the damage to Northwest's pipeline facilities and the disruption of services provided by the facilities.

## THE PARTIES, JURISDICTION AND VENUE

5.      Northwest is a general partnership organized under the laws of Delaware with its principal place of business in Utah.  Northwest's general partner is a Delaware limited partnership whose principal place of business is in Utah.  Northwest is the owner and operator of an interstate natural gas pipeline system, a portion of which traverses Lincoln County, Wyoming, near the town of Kemmerer.

6.      Chevron is a corporation organized under the laws of Missouri with its principal place of business in Colorado.  It owns and operates a surface coal mine in Lincoln County, Wyoming, known as the Kemmerer Coal Mine.  The Kemmerer Coal Mine is located adjacent to a segment of Northwest's pipeline system in Lincoln County, Wyoming.

7.      This Court has subject matter jurisdiction over this case under 28 U.S.C. §1331 because it is a civil action that arises under the federal Surface Mining Control and Reclamation Act, 30 U.S.C. §1270(f).

8.      This Court also has subject matter jurisdiction pursuant to 28 U.S.C. §1332 because it is a civil action between citizens of different states where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

14141027.5                                3

9.      This Court has personal jurisdiction over Chevron because it owns property and regularly conducts business in Wyoming.

10.     Venue is proper in this district under 28 U.S.C. §1391(a) because a substantial part of the events giving rise to the claims occurred in this district, and because Chevron is subject to personal jurisdiction in this district.

## FACTS

11.     Northwest is a federally regulated interstate natural gas pipeline company which owns and operates a system that runs from New Mexico through Colorado, Utah, Wyoming, Idaho, Oregon and Washington, terminating near the Canadian border.  In the vicinity of Kemmerer, Wyoming, the system consists of two parallel pipelines having diameters of 26 inches and 30 inches respectively, the Kemmerer Compressor Station, and ancillary facilities.

12.     Northwest's pipeline system provides natural gas to markets throughout the western United States.  It is a primary source of natural gas for local distribution companies, industries, municipalities, and other end-users in Idaho, Oregon and Washington, as well as for "off-system" markets in other states.  Northwest's operations are regulated by the Federal Energy Regulatory Commission and the United States Department of Transportation's Pipeline and Hazardous Materials Safety Administration.

13.     In the vicinity of Kemmerer, Wyoming, the pipeline system is located entirely within a 60-foot wide perpetual easement obtained by deed from Union Pacific Land Resources Corporation dated April 13, 1972 (the "1972 Deed").  The pipeline system in this area parallels State Highway 30, which runs in a northwesterly direction south of Kemmerer.

14.     Chevron conducts coal mining operations at the Kemmerer Coal Mine near Kemmerer.  The coal mine is located on property adjacent to Northwest's pipeline system and State Highway 30.  Chevron mines the property pursuant to a Special Warranty Deed dated October 13, 1983, from Rock Springs Royalty Company.  Under the 1983 Special Warranty Deed, Chevron's right to extract coal was explicitly made subject to Northwest's preexisting

rights under the 1972 Deed and any and all restrictions and limitations imposed by public authority.

15.     In the summer of 2011, Chevron notified Northwest that large cracks had appeared in the earth beneath Northwest's pipeline system immediately adjacent to the northern face of the Kemmerer Coal Mine.

16.     Northwest immediately investigated the cracks and their impact on its pipeline system. Its investigation disclosed that, as the result of cracks and earth movement emanating from the northern wall of the Kemmerer Coal Mine, the pipeline system had been subjected to dangerous levels of stress. Northwest undertook operations to relieve the stress, but it became increasingly concerned that unless the pipeline system was shut down, by-passed, and relocated, complete failure of the system would be imminent.

17.     On July 14, 2011, Northwest representatives met with Chevron and its consultants to discuss the situation. Chevron's geotechnical consultant, John Kanuchi, reported on his investigation of cracks and earth movement caused by Chevron's mining operations near the Northwest pipeline system. He reported that Chevron had not shored or otherwise stabilized the northern wall of the mine, which was immediately adjacent to the Northwest pipeline system and State Highway 30, which runs parallel to the pipelines. He observed that State Highway 30 had buckled as the result of cracks and earth movement emanating from the coal mine. He also reported that the cracks in the vicinity of the pipelines had begun developing more than a year before as Chevron's mining activities intensified in the area. He reported that the cracks were becoming worse and threatened to cause further earth movement that would damage the pipeline system. He advised Northwest's representatives that, as moisture penetrated the ground during the September rainy season and thereafter, there was a "decent probability" that the northern wall of the mine would move, causing a massive shift in the earth underlying the pipelines and State Highway 30. This shift in the earth could result in catastrophic damage to the pipeline system. Mr. Kanuchi recommended that before September 2011 Northwest move the pipelines to avoid

failure of the system, and he provided Northwest with a map of the potential slide area to warn Northwest of the area to avoid in rerouting the system.  Northwest's engineers and its consultant had no reason to disagree with Chevron's assessment of the risk.

18.     Beginning in July 2011, Northwest began planning and then implementing a two-step strategy to relocate the relevant segment of its pipeline system to a new route that would be unaffected by Chevron's mining activities.  The first step in the strategy was to build a temporary rerouted pipeline on an emergency basis at a location about 400 yards from the mine.  The second step was to acquire the land rights and permits necessary to rebuild the 26-inch and 30-inch lines over a newly acquired permanent route about a mile from the northern face of the Kemmerer Coal Mine.  The route for the permanent relocation of the pipeline system coincides with the State of Wyoming's planned rerouting of State Highway 30, which will also be relocated to avoid further damage from Chevron's mining activities.

19.     Beginning in the summer of 2011 and at all relevant times thereafter, Northwest kept Chevron fully advised of its plans.  As Northwest proceeded with work to obtain land rights and permits for the new locations, it kept Chevron apprised of the proposed routes.  It provided Chevron with its designs for the rerouting of the system.  Northwest also made it clear to Chevron that it expected Chevron to reimburse Northwest for all of the costs of relocating the pipeline system to both the temporary site and the permanent site.

## FIRST CAUSE OF ACTION
### Violation of 30 U.S.C. § 1201 et seq. and Wyo. Stat. Ann. § 35-11-401 et seq.

20.     Northwest hereby realleges the facts set forth in paragraphs 1 through 19, above.

21.     Chevron's operation of the Kemmerer Coal Mine is subject to regulation under the federal Surface Mining Control and Reclamation Act of 1977 (the "Federal Act"), 30 U.S.C. §1201 et seq., and the Wyoming Surface Mining Act (the "Wyoming Act"), Wyo. Stat. Ann. § 35-11-401 et seq.

14141027.5

6

22.     Both the Federal Act and the Wyoming Act establish a private cause of action for any person who is damaged in his person or property through the violation of any operator of any rule, regulation, order or permit under Wyoming's surface coal mining program. 30 U.S.C. § 1270(f); Wyo. Stat. Ann. § 35-11-902(o).

23.     The Wyoming Act established a surface mining regulatory program that was designed to comply with the requirements of the Federal Act and was approved as such by the United States Department of the Interior.

24.     Under the Wyoming Act, Wyo. Stat. Ann. §35-11-406(b)(xiii), Chevron had the obligation to adopt mining procedures that would "avoid constituting a public nuisance, endangering the public safety . . .[or] property . . . in or adjacent to the permit area." Under other provisions of the Wyoming Act, id. § 35-11-415(b)(xi)(C)(II), Chevron had the obligation to avoid any use of explosives that would "damage property outside the permit area."

25.     Under Wyoming state regulations adopted by the State's Department of Environmental Quality pursuant to the Wyoming Act, Chevron had the obligation to "minimize damage, destruction, or disruption of services" provided by natural gas pipelines that are not part of the surface coal mining operation. Code of Wyo. Rules § 020-040-004(2)(x). Wyoming courts have interpreted this provision to require surface coal operators to *avoid* any damage, destruction or disruption of natural gas pipeline services. Wyoming state regulations also prohibit surface coal mining operations within 100 feet of a public road unless a public hearing is held and the Wyoming Department of Environmental Quality finds that the interests of the public and landowners are protected. Id. § 020-040-12(1)(v)(D).

26.     Chevron has violated the Federal Act, the Wyoming Act, and Wyoming regulations governing coal surface mining in at least the following respects:

(a)     Chevron conducted its coal mining operations so as to constitute a public nuisance that endangered the public safety and the integrity of Northwest's pipeline system and

threatened to disrupt natural gas transmission services to millions of people in markets served by the system.

(b)    Northwest alleges on information and belief that Chevron failed to avoid the use of explosives that would cause damage to Northwest's pipeline system.

(c)    Chevron failed to minimize or avoid damage, destruction and disruption of services provided by Northwest's pipeline system.

(d)    Chevron conducted its mining operations without taking reasonable precautions necessary to avoid damage, destruction and disruption of services provided by Northwest's pipeline system.

(e)    Chevron conducted its coal mining operations so as to constitute a public nuisance that endangered the public safety by causing damage to State Highway 30, without an agency determination that the interests of the public and Northwest were protected.

27.    As the direct result of Chevron's misconduct, Northwest has been injured in the following respects:

(a)    Northwest has been required to terminate natural gas transmission service through a segment of its pipeline system that is more than a mile in length; and

(b)    Northwest has been required to reroute this segment of its pipeline system, thereby incurring costs that it estimates will exceed $20,000,000 upon completion of the work described in paragraph 17, above.

28.    Northwest is entitled to an order of the Court declaring that Chevron's misconduct constituted a violation of the Federal Act, the Wyoming Act, and the regulations adopted pursuant to the Wyoming Act, and that Chevron is liable to Northwest for all damages suffered as a consequence.

29.    Northwest is further entitled to an award of damages as follows:

(a)    Northwest is entitled to recover from Chevron all costs and expenses it has expended and must yet expend in monitoring and attempting to mitigate the stress to its pipeline

system, and in isolating, stabilizing, by-passing, and relocating the natural gas transmission system;

(b)      Northwest is entitled to recover interest on all such costs and expenses at the highest allowable rate; and

(c)      Pursuant to 30.U.S.C. § 1270(f) and Wyo. Stat. Ann §35-11-902(o), Northwest is entitled to recover all of its attorney fees and expert witness fees incurred in enforcing its rights.

## SECOND CAUSE OF ACTION
### Deprivation of Right to Lateral Support

30.      Northwest hereby realleges the facts set forth in paragraphs 1 through 29, above.

31.      Under the common law of Wyoming, Northwest has the right of lateral support with respect to the permanent easement on which its pipeline system runs. Persons who conduct operations on adjacent properties are prohibited by law from activities that would deprive Northwest's pipeline system of lateral support.

32.      Chevron has violated Northwest Pipeline's right to lateral support in at least the following respects:

(a)      Chevron has conducted mining operations so as to cause massive shifts in the earth adjacent to and underlying Northwest's pipeline system, with the result that the pipeline system's integrity was threatened, thereby compelling termination of natural gas transmission service and relocation of the system.

(b)      Chevron failed to exercise reasonable care in the design of its mine, with the result that Northwest's easement was deprived of lateral support.

(c)      Chevron failed to exercise reasonable care in its use of explosives and equipment, with the result that Northwest's easement was deprived of lateral support.

33.      As a direct result of Chevron's misconduct, Northwest has been injured in the following respects:

14141027.5                                      9

(a)     Northwest has been required to terminate natural gas transmission service through a segment of its pipeline system that is more than a mile in length; and

(b)     Northwest has been required to reroute this segment of its pipeline system, thereby incurring costs that it estimates will exceed $20,000,000 upon completion of the work described in paragraph 17, above.

34.     Northwest is entitled to an order of the Court declaring that Chevron's misconduct constituted a violation of Northwest's right to lateral support and that Chevron is liable to Northwest for all damages suffered as a consequence.

35.     Northwest is further entitled to an award of damages as follows:

(a)     Northwest is entitled to recover all costs and expenses it has expended and must yet expend in monitoring and attempting to mitigate the stress to its pipeline system, and in isolating, stabilizing, by-passing, and relocating natural gas transmission service through its pipeline system;

(b)     Northwest is entitled to recover interest on all such costs and expenses at the highest allowable rate.

## THIRD CAUSE OF ACTION
### Private Nuisance

36.     Northwest hereby realleges the facts set forth in paragraphs 1 through 35, above.

37.     Under the common law of Wyoming, Northwest has the right of quiet enjoyment of the permanent easement over which its pipeline system runs. Persons who occupy adjacent property may not make unreasonable, unwarranted, or unlawful use of their own property that results in obstruction or injury to the property rights of adjacent owners or occupants. Chevron's unreasonable, unwarranted, or unlawful activities constitute a private nuisance that prevents Northwest Pipeline from quiet and lawful use of its easement.

38.     Chevron has interfered with Northwest Pipeline's right to use its easement in at least the following respects:

(a)     Chevron has conducted mining operations so as to cause massive shifts in the earth adjacent to Northwest's pipeline system. This earth movement has invaded the easement where the pipeline is located, causing ground cracks and otherwise threatening the pipeline system's integrity. The nuisance has necessitated the temporary by-passing of Northwest's natural gas transmission system and the permanent relocation of the system.

(b)     Chevron failed to exercise reasonable care in the design of its mine, with the result that Northwest can no longer use its easement for its sole and stated purpose.

(c)     Chevron failed to exercise reasonable care in its use of explosives and equipment, with the result that Northwest's easement no longer provides a solid and stable support for the pipeline.

39.     As a direct result of Chevron's misconduct, Northwest has been injured in the following respects:

(a)     Northwest has been deprived of the reasonable and lawful use and enjoyment of its easement;

(b)     Northwest has been required to terminate and by-pass natural gas transmission service through a segment of its pipeline system that is more than a mile in length; and

(c)     Northwest has been required to reroute this segment of its pipeline system, thereby incurring costs that it estimates will exceed $20,000,000 upon completion of the work described in paragraph 17, above.

40.     Northwest is entitled to an order of the Court declaring that Chevron's conduct of its mining operations is a nuisance that impairs Northwest's right to use its pipeline easement, and that Chevron is liable to Northwest for all damages suffered as a consequence.

41.     Northwest is further entitled to an award of damages as follows:

(a)     Northwest is entitled to recover all costs and expenses it has expended and must yet expend monitoring and attempting to mitigate the stress to its pipeline system, and in isolating, stabilizing, by-passing, and relocating the natural gas transmission system.

(b)     Northwest is entitled to recover interest on all such costs and expenses at the highest allowable rate.

## FOURTH CAUSE OF ACTION
### Public Nuisance

42.     Northwest hereby realleges the facts set forth in paragraphs 1 through 41, above.

43.     Together with the public, Northwest enjoys all of the benefits of an uninterrupted supply of natural gas and the right to safe and unobstructed use of the state's public highways. Chevron's unreasonable, unwarranted, or unlawful activities constituted a public nuisance that, if left uncorrected, would prevent the public generally, and Northwest Pipeline specifically, from continuing to enjoy the benefits of an uninterrupted natural gas supply and from safe and lawful use of the public highway adjacent to the Mine.

44.     Chevron has interfered with Northwest Pipeline's right to use its easement in at least the following respects:

(a)     Chevron has unlawfully interfered with Northwest's natural gas transmission system and with the public highway adjacent to its Kemmerer Mine by threatening the integrity of the pipeline system and causing the public highway to be obstructed or hazardous, in violation of section 35-10-401(a) of the Wyoming Statutes. Chevron's mining operations have caused severe and irreversible earth movement rendering the pipeline system unsafe and inoperable and the highway unsafe. Both the pipeline system and State Highway 30 require relocation as the result of Chevron's conduct.

(b)     Northwest's damages are separate and distinct from those of the public at large because, as set forth above, the same activities which have deprived the public of its rights

also deprived Northwest of its use and enjoyment of the pipeline easement located near the highway.

45. As a direct result of Chevron's misconduct, Northwest has been injured in the following respects:

(a) Northwest, together with the public generally, has been deprived of its right to safe use of the public highway;

(b) Northwest has been deprived of the reasonable and lawful use and enjoyment of its pipeline located in its easement near the public highway;

(c) Northwest has been required to terminate natural gas transmission service through a segment of its pipeline system that is more than a mile in length; and

(d) Northwest has been required to reroute this segment of its pipeline system, thereby incurring costs that it estimates will exceed $20,000,000 upon completion of the work described in paragraph 17, above.

46. Northwest is entitled to an order of the Court declaring that Chevron's mining operations near the highway and easement constitutes a public nuisance.

47. Northwest is further entitled to an award of damages as follows:

(a) Northwest is entitled to recover all costs and expenses it has expended and must yet expend in monitoring and attempting to mitigate the stress to its pipeline system, and in isolating, stabilizing, by-passing, and relocating the natural gas transmission system; and

(b) Northwest is entitled to recover interest on all such costs and expenses at the highest allowable rate.

## FIFTH CAUSE OF ACTION
### Declaratory and Injunctive Relief

48. Northwest hereby realleges the facts set forth in paragraphs 1 through 47, above.

49. As alleged in paragraph 18 and 19, above, Northwest is now in the process of relocating the relevant portion of its pipeline facilities to a newly acquired permanent route about

a mile from the northern face of the Kemmerer Coal Mine.  Northwest has kept Chevron apprised of the proposed permanent route and has provided Chevron with specific location information for the rerouted system so as to avoid future damage to its system from Chevron's mining activities.

50.     Although Chevron has not objected to Northwest's proposed permanent route for its pipeline system, Chevron has taken the position that it has a continuing right to conduct mining operations without regard to the location of the Northwest pipeline system.  Chevron has also taken the position that its mining activities may lawfully interfere with Northwest's pipeline operations and that Northwest must bear the economic burden of any further relocation in the event of a future conflict between Chevron's mining activities and Northwest's pipeline activities.

51.     An actual controversy has arisen between Northwest and Chevron concerning their respective rights and obligations:

(a)     On the one hand, Northwest takes the position that it is entitled to operate its pipeline facilities over a newly acquired route without interference from Chevron, and that under the federal Act, the Wyoming Act, and the common law, Chevron is forbidden from undertaking mining activities that would interfere with the pipeline facilities.

(b)     On the other hand, Chevron takes the position that it may lawfully conduct mining operations without regard to the location of Northwest's pipeline facilities, that Northwest's pipeline facilities trespass on any lands as to which Chevron has the right to extract coal, and that Northwest must bear the economic burden to relocate its pipeline facilities if Chevron chooses to conduct mining operations in the vicinity of Northwest's pipeline facilities.

52.     Pursuant to the terms of 28 U.S.C. §§2201 and 2202, Northwest is entitled to an order as follows:

(a)     Declaring that Northwest is entitled to operate its pipeline facilities over the newly acquired route without any future interference or threat of interference from Chevron;

(b)     Declaring that the law forbids Chevron from undertaking any mining activities that interfere with or threaten the integrity of Northwest's pipeline activities; and

(c)     Permanently enjoining Chevron from undertaking any such mining activities.

WHEREFORE, Northwest demands judgment as follows:

1.     With respect to its First Cause of Action, Northwest requests:

(a)     An order of the Court declaring that Chevron's misconduct constituted a violation of the Federal Act, the Wyoming Act, and the Wyoming regulations adopted pursuant to the Wyoming Act and that Chevron is liable to Northwest for all damages suffered as a consequence;

(b)     An award of damages equaling all of its costs and expenses incurred in monitoring and attempting to mitigate the stress to its pipeline system, and in isolating, stabilizing, by-passing, and relocating the natural gas transmission system.

(c)     An award of interest on all such costs and expenses at the highest allowable interest rate; and

(d)     An award of all of its attorney fees and expert witness fees incurred in enforcing its rights.

2.     With respect to its Second Cause of Action, Northwest requests:

(a)     An order of the Court declaring that Chevron's misconduct constituted a violation of Northwest's right to lateral support and that Chevron is liable to Northwest for all damages suffered as a consequence;

(b)     An award of damages equaling all of its costs and expenses incurred in monitoring and attempting to mitigate the stress to its pipeline system, and in isolating, stabilizing, by-passing, and relocating the natural gas transmission system; and

(c)     An award of interest on all such costs and expenses at the highest allowable interest rate.

3.     With respect to its Third Cause of Action, Northwest requests:

(a)     An order of the Court declaring that Chevron's mining operations causing the ground movement are a private nuisance that has impaired Northwest's lawful interests in the pipeline easement;

(b)     An award of damages equaling all of its costs and expenses incurred in monitoring and attempting to mitigate the stress to its pipeline system, and in isolating, stabilizing, by-passing, and relocating the natural gas transmission system; and

(c)     An award of interest on all such costs and expenses at the highest allowable interest rate.

4.     With respect to its Fourth Cause of Action, Northwest demands:

(a)     An order of the Court declaring that Chevron has conducted its operations in a manner constituting a public nuisance, and that Chevron is liable to Northwest for all damages suffered as a consequence;

(b)     An award of damages equaling all of its costs and expenses incurred in monitoring and attempting to mitigate the stress to its pipeline system, and in isolating, stabilizing, by-passing, and relocating the natural gas transmission system; and

(c)     An award of interest on all such costs and expenses at the highest allowable interest rate.

5.     With respect to its Fifth Cause of Action, Northwest demands an order:

(a)     Declaring that Northwest is entitled to operate its pipeline facilities over the newly acquired route without any future interference or threat of interference from Chevron;

(b)     Declaring that the law forbids Chevron from undertaking any mining activities that interfere with or threaten the integrity of Northwest's pipeline activities; and

(c)     Permanently enjoining Chevron from undertaking any such mining activities.

6.     With respect to all of its causes of action, Northwest demands all such other relief

as the Court deems just.

DATED this 23rd day of January, 2012.

Paul J. Hickey (WY# 5-1431)
HICKEY & EVANS, LLP
1800 Carey Ave., Suite 700
P.O. Drawer 467
Cheyenne, WY 82003-0467
Telephone: (307) 634-1525
Facsimile: (307) 638-7335
phickey@hickeyevans.com

Alan L. Sullivan (*Pro Hac Vice* Pending)
Jared C. Fields (*Pro Hac Vice* Pending)
Snell & Wilmer LLP
15 West South Temple, Suite 1200
Gateway Tower West
Salt Lake City, Utah 84101
Telephone: (801) 257-1900
Facsimile: (801) 257-1800
asullivan@swlaw.com
jfields@swlaw.com

**ATTORNEYS FOR PLAINTIFF
NORTHWEST PIPELINE GP**