Paul J. Hickey
Hickey & Evans, LLP
1800 Carey Ave., Suite 700
P.O. Drawer 467
Cheyenne, WY  82003
Telephone: (307) 634-1525
Facsimile: (307) 638-7335

Alan L. Sullivan (*Pro Hac Vice Admission Pending*)
Jared C. Fields (*Pro Hac Vice Admission Pending*)
Snell & Wilmer L.L.P.
15 West South Temple, Suite 1200
Gateway Tower West
Salt Lake City, Utah  84101-1531
Telephone:  (801) 257-1900
Facsimile:  (801) 257-1800

Attorneys for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| Northwest Pipeline GP, a Delaware general partnership,<br><br>Plaintiff,<br><br>vs.<br><br>Chevron Mining, Inc., a Missouri corporation, and Westmoreland Kemmerer, Inc., a Delaware corporation,<br><br>Defendants. | **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS**<br><br>Case No. 2:12-cv-00021-NDF |

Plaintiff Northwest Pipeline GP ("Northwest") respectfully submits this memorandum in opposition to defendants' Partial Motion to Dismiss:  Claims Relating to 30-Inch Pipeline (February 24, 2012).

## SUMMARY

In this case, Northwest seeks damages for the costs of relocating a portion of its interstate natural gas transmission system near Kemmerer, Wyoming. Northwest was required to relocate the system because the mining operations of defendant Chevron Mining, Inc. ("Chevron") destabilized the land supporting the transmission system, causing cracks near the pipelines and causing portions of a nearby highway to buckle. According to Chevron's own experts, Chevron's mining operations threatened to cause a landslide that would have destroyed the pipelines. Northwest's Amended Complaint asserts five causes of action for (1) violation of the federal Surface Mining Control and Reclamation Act of 1977 and the Wyoming statute enacted pursuant to the federal act, (2) deprivation of the common law right to lateral support, (3) private nuisance, (4) public nuisance, and (5) declaratory and injunctive relief establishing Northwest's continuing right to operate its pipeline system without disruption by defendant Westmoreland Kemmerer, Inc. (Westmoreland"), which recently purchased the Kemmerer Coal Mine. Before Chevron's mining activities required their relocation, Northwest operated two parallel pipelines, 26 and 30 inches in diameter, each of which ran within the boundaries of a sixty foot-wide permanent easement acquired by Northwest's predecessor in 1972.

Defendants' partial motion to dismiss argues that, as a matter of law, Chevron should not be obligated to pay for the relocation of the 30-inch pipeline, in contrast to the 26-inch pipeline, because the 30-inch pipeline was built after Chevron acquired the right in 1983 to mine coal in the area. Defendants' entire argument is based on a provision in the 1983 deed stating that the coal operator was not "required to leave or provide subjacent or lateral support." Significantly, defendants' motion would not dispose of any of Northwest's five causes of action. Rather, the motion asks the Court to unscramble the components of Northwest's claimed damages, and to do so at the pleading stage, before any discovery.

Defendants' partial motion to dismiss should be denied on two grounds.

14599447.2

2

**Statutory claims**--In relation to Northwest's First Cause of Action and Fifth Cause of Action (both of which are based on federal and state surface mining acts), the rights Chevron acquired under the 1983 Special Warranty Deed were explicitly made subject to "[a]ny and all restrictions and limitations imposed by public authority."  These restrictions and limitations unquestionably include those imposed by the Federal Surface Mining Control and Reclamation Act, 30 U.S.C. §1201 et seq. (the "Federal Act") and the Wyoming Surface Mining Act, Wyo. Stat. Ann. §35-11-401 et seq. (the "Wyoming Act").  These statutes required Chevron, and now require Westmoreland, to avoid any damage, destruction or disruption of natural gas pipeline services. Notwithstanding the provisions of the 1983 Special Warranty Deed, both the Federal Act and the Wyoming Act authorize a private cause of action in Northwest's favor for Chevron's misconduct in threatening the integrity of both pipelines, and they protect Northwest's pipelines from such misconduct in the future.  For these reasons, defendants are not entitled to dismissal of Northwest's First Cause of Action or its Fifth Cause of Action as to either the 30-inch pipeline or the 26-inch pipeline.

**Common law claims**--The Court should deny the motion as to Northwest's Second Cause of Action, Third Cause of Action, and Fourth Cause of Action (which seek relief under the common law for loss of lateral support, private nuisance and public nuisance) because both the 26-inch pipeline and the 30-inch pipeline lie within the easement granted to Northwest's predecessor in 1972.  It is undisputed that defendants' rights to mine coal are subject to Northwest's right to make use of the pipeline easement acquired in the 1972 deed.  Under the common law, Northwest has the right to lateral support of the land within the easement, and it has the common law right to be free of nuisances that threaten its pipelines.  Chevron unlawfully eliminated that lateral support, created a nuisance, and thereby became strictly liable for all resulting damages, regardless of the specific pipeline to which they relate.  Although defendants now argue that Northwest lacked the right to place a second pipeline on the 1972 easement,

neither defendant has ever held fee title to the property over which Northwest's easement runs; neither defendant has standing to challenge Northwest's use of its easement or to claim that its addition of the second pipeline exceeded the terms of the 1972 easement. It is undisputed, moreover, that in 2004, Northwest obtained the right to place the second pipeline on the easement from the fee owner of the property. Northwest has operated both pipelines for years pursuant to those rights and without objection from either of the defendants.

## FACTS

In considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court takes all facts alleged in the Complaint as true. *See Khalik v. United Air Lines*, No. 11-1063, 2012 U.S. App. LEXIS 2375 (10th Cir. Feb. 6, 2012). Factual allegations must be construed in the light most favorable to the non-moving party. *Tomlinson v. El Paso Corp.*, 653 F.3d 1281, 1286 (10th Cir. 2011). The following facts are set forth in Northwest's Amended Complaint ("Complaint"), in the exhibits accompanying defendants' partial motion to dismiss, and in the Declaration of Peter Richards, which accompanies this memorandum.

### 1. Northwest's Pipeline System

Northwest is a federally regulated interstate natural gas pipeline company which owns and operates a pipeline system that runs from New Mexico through Colorado, Utah, Wyoming, Idaho, Oregon and Washington, terminating near the Canadian border. (Complaint, ¶ 13.) In the vicinity of Kemmerer, Wyoming, the system consists of two parallel pipelines having diameters of 26 inches and 30 inches respectively, the Kemmerer Compressor Station, and ancillary facilities. (*Id.*, ¶ 13.) Northwest's pipeline system provides natural gas to markets throughout the western United States. (*Id.*, ¶ 14.)

As the Amended Complaint makes clear, in the portion of the pipeline system relevant to this dispute, *both* pipelines are located within a 60-foot wide perpetual easement obtained by deed from Union Pacific Land Resources Corporation dated April 13, 1972 (the "1972 Deed").

(Complaint, ¶ 15.)  The 1972 Deed was also appended as Exhibit A to the Defendants' Motion. The pipeline system in this area parallels U.S. Highway 30, which runs in a northwesterly direction south of Kemmerer. (Complaint, ¶ 15.)

In addition to the easement created by the 1972 Deed, Northwest acquired an overlapping 75-foot wide permanent easement from the current fee owner of the property, Anadarko Land Corporation, in November 2004 (the "2004 Agreement").  (The 2004 Agreement is not referenced in the Amended Complaint, but the defendants submitted it as Exhibit D to their motion.)  Northwest obtained the easement under the 2004 Agreement when it added the 30-inch pipeline to its system in 2004.  The exhibits to the 2004 Agreement show that the second pipeline, at least in the section of the system relevant to this dispute, runs within the confines of the original 1972 easement.  (The overlapping nature of Northwest's easements is clear from Exhibit "C" to the 1972 easement, which shows a "Permanent Easement Detail" in which the new pipeline runs parallel to, at a distance of 20 feet from, the original pipeline.)

As reflected in the Declaration of Peter Richards attached hereto as Exhibit 1, the two parallel pipelines are part of an integrated system.  Both the 26-inch pipeline and the 30-inch pipeline operate in tandem to deliver gas in the same direction.  They are physically connected at compressor stations and at other facilities both upstream and down stream.  Both pipelines are necessary to provide continual service during maintenance outages.  If one of the parallel pipelines were to be disabled, Northwest would lack the capacity to supply the demands of its customers and to meet the terms of its federal certificate of public convenience and necessity. Declaration of Peter Richards (March 15, 2012) ¶¶ 8 & 10.

2.     **Chevron's Mining Operations**

Chevron and its predecessors by merger have conducted coal mining operations at the Kemmerer Coal Mine for nearly three decades.  (Complaint, ¶ 16.) The coal mine is located on property adjacent to Northwest's pipeline system and U.S. Highway 30. (*Id.*)  Neither of the

defendants owns the property in the vicinity of the mine in fee simple; rather, Chevron mined (and Westmoreland now mines) the property pursuant to a Special Warranty Deed dated October 13, 1983, from Rock Springs Royalty Company. (Complaint, ¶ 16; Ex. C to Motion.)  Under the 1983 Special Warranty Deed, defendants' right to extract coal was explicitly made subject to Northwest's preexisting rights under the 1972 Deed and any and all restrictions and limitations imposed by public authority.  (Complaint, ¶ 16.)  Specifically, the 1983 Special Warranty Deed states that the deed "is made· SUBJECT to the following: . . . (e) Any and all restrictions and limitations imposed by public authority, and any easements, restrictions and/or outstanding rights of record . . . including, without limiting the same, those instruments identified on Exhibit C hereto attached and hereby made a part hereof."  (Ex. C to Motion, at 3.)  The 1972 deed was expressly identified in the exhibit to the 1983 Special Warranty Deed, and its terms therefore limited the scope of the rights granted under the 1983 Special Warranty Deed. (Ex. C to Motion, at Ex. C).

Among the "restrictions imposed by public authority" limiting Chevron's rights (and now Westmoreland's rights) are statutes and rules regulating surface mining operations. Defendants' operation of the Kemmerer Coal Mine was, and remains, subject to regulation under the Federal Act and the Wyoming Act.  (Complaint, ¶ 25.)  The Wyoming Act established a surface mining regulatory program that was designed to comply with the requirements of the Federal Act and was approved as such by the United States Department of the Interior. (*Id.*, ¶ 27.)  Under the Wyoming Act, Wyo. Stat. Ann. §35-11-406(b)(xiii), Chevron had the obligation to adopt mining procedures that would "avoid constituting a public nuisance, endangering the public safety . . .[or] property . . . in or adjacent to the permit area." (*Id.*, ¶ 28.)  Under other provisions of the Wyoming Act, *id.* § 35-11-415(b)(xi)(C)(II), Chevron had the obligation to avoid any use of explosives that would "damage property outside the permit area." (*Id.*)

Under regulations adopted by the Wyoming Department of Environmental Quality pursuant to the Federal Act and the Wyoming Act, Chevron had the obligation to "minimize damage, destruction, or disruption of services" provided by natural gas pipelines that are not part of the surface coal mining operation. (*Id.*, ¶ 29.) Code of Wyo. Rules § 020-040-004(2)(x). Wyoming courts have interpreted this provision to require surface coal operators to avoid any damage, destruction or disruption of natural gas pipeline services. *Belle Fourche Pipeline Co. v. Wyoming Dept. of Envtl Qual.*, 766 P.2d 537, 550 (Wyo. 1988). Wyoming regulations also prohibit surface coal mining operations within 100 feet of a public road unless a public hearing is held and the Wyoming Department of Environmental Quality finds that the interests of the public and landowners are protected. Code of Wyo. Rules § 020-040-12(1)(v)(D).

### 3. Northwest's Decision to Relocate the Pipeline System

In the summer of 2011, Chevron notified Northwest that large cracks had appeared in the earth near Northwest's pipeline system immediately adjacent to the northern face of the Kemmerer Coal Mine. (Complaint, ¶ 17.) Northwest immediately investigated the cracks and their impact on its pipeline system. (*Id.*, ¶ 18.) Its investigation disclosed that, as the result of cracks and earth movement emanating from the northern wall of the Kemmerer Coal Mine, the pipeline system was subjected to dangerous levels of stress. (*Id.*, ¶ 19.) Northwest undertook operations to relieve the stress, but it became increasingly concerned that unless the pipeline system was shut down, by-passed, and relocated, complete failure of the system could be imminent. (*Id.*, ¶ 18.)

In July 2011, Northwest met with Chevron's geotechnical consultants and engineers concerning the potential crisis. Chevron's principal independent consultant reported that Chevron had not shored or otherwise stabilized the northern wall of the mine, which was immediately adjacent to the Northwest pipeline system and U.S. Highway 30, which runs parallel to the pipelines. (*Id.*, ¶ 19.) He observed that U.S. Highway 30 had buckled as the result

of cracks and earth movement emanating from the coal mine. (*Id.*) He also reported that the cracks in the vicinity of the pipelines had begun developing more than a year before as Chevron's mining activities intensified in the area. (*Id.*) He reported that the cracks were becoming worse and threatened to cause further catastrophic earth movement that would damage the pipeline system. (*Id.*) He advised Northwest's representatives that, as moisture penetrated the ground during the September rainy season and thereafter, there was a "decent probability" that the northern wall of the mine would move, causing a massive shift in the earth underlying the pipelines and U.S. Highway 30. (*Id.*) This shift in the earth would result in catastrophic damage to the pipeline system. (*Id.*)

Chevron's consultant recommended that, before the fall rains, Northwest move the pipelines to avoid failure of the system. He provided Northwest with a map of the potential slide area to warn Northwest of the area to avoid in rerouting the system. (*Id.*)

Beginning in July 2011, Northwest began planning and then implementing a two-step strategy to relocate the relevant segment of its pipeline system to a new route that would be unaffected by Chevron's mining activities. (*Id.*, ¶ 20.) The first step was to build a temporary rerouted pipeline on an emergency basis at a location about 400 yards from the mine. (*Id.*) The second step was to acquire the land rights and permits necessary to rebuild the 26-inch and 30-inch lines over a newly acquired permanent route about a mile from the northern face of the Kemmerer Coal Mine. (*Id.*) The route for the permanent relocation of the pipeline system coincides with what Chevron represented was likely to be the rerouting of U.S. Highway 30. (*Id.*) In early 2012, Chevron sold the Kemmerer Coal Mine to Westmoreland. (*Id.*, ¶ 8.)

## ARGUMENT

Under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), a complaint will withstand a Rule 12(b)(6) motion to dismiss if it contains enough allegations of fact, taken as true, "to state a claim to relief that is plausible on its face." The Tenth Circuit has observed that

the *Twombly* plausibility standard does not depart from Rule 8's requirement that plaintiffs provide only "a short and plain statement of the claim." *Khalik*, 2012 U.S. App. LEXIS 2375, *8. The plausibility standard is designed primarily to preclude complaints making only conclusory allegations that recite the elements of the causes of action. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570) (plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'") Northwest has pleaded specific facts that clearly establish plausible claims against the defendants.

> **1.  Northwest is Entitled to Maintain Claims Against Defendants under State and Federal Surface Mining Acts Regardless of the Provisions in the 1983 Special Warranty Deed**.

Defendants' motion to dismiss completely ignores Northwest's rights under the Federal Act and the Wyoming Act, both of which confer upon injured plaintiffs the right to sue coal mine operators for violation of the statutes and related rules. *See* 30 U.S.C. § 1270(f); Wyo. Stat. Ann. § 35-11-902(o). As alleged in paragraph 30 of the Amended Compliant, Chevron violated these statutes by (among other things) conducting its coal mining operations so as to constitute a public nuisance that endangered the public safety and the physical integrity of the pipeline system, and by failing to take precautions necessary to avoid damage to a natural gas pipeline. The statutory restrictions that Northwest seeks to enforce in the First and Fifth Causes of Action are primarily public safety measures. They are designed to prevent explosions, fires, leaks and disruptions in gas service resulting from coal mining operations near gas pipelines. The statutes and regulations identify natural gas pipelines for special protection because the public has an obvious interest in safe and continuous natural gas service. *See, e.g.*, 020-040-004 Wyo. Code R. 2(x) ("All operations shall be conducted in a manner which minimizes damage, destruction, or disruption of services provided by . . . oil, gas and coal-slurry pipelines . . . ") *See also Belle*

*Fourche Pipeline Co. vs. Wyoming Dept. of Env. Qual.*, 766 P.2d 537, 550 (Wyo. 1988) (holding that the requirement to "minimize" damage to a natural gas pipeline is materially identical to a statutory requirement to avoid damage to the pipeline).

Defendants' motion does not mention Northwest's statutory rights under the Surface Mining Acts. Their only argument is that the 1983 Special Warranty Deed conveyed coal rights "without being required to leave or provide subjacent and lateral support[.]" Seizing on this language in isolation, however, defendants have ignored other provisions in the 1983 Special Warranty Deed that impose restrictions on their right to mine coal. According to the 1983 Special Warranty Deed, defendants' rights are subject to "any and all restrictions and limitations imposed by public authority," which necessarily include state and federal surface mining laws. Regardless of the other provisions of the 1983 Special Warranty Deed between Chevron and its grantor, therefore, neither Chevron nor Westmoreland has the right to ignore the provisions of the federal and state surface mining regulations. *See, e.g.*, *Cogar vs. Sommerville*, 379 S.E. 764, 769 (W. Va. 1989) (holding that waivers of liability in severance deeds did not waive the coal operator's liability for violation of the Federal Act and West Virginia's surface mining act). Defendants have offered no authority suggesting that a surface owner and the owner of the mineral estate may lawfully agree between themselves to evade the requirements of federal and state surface mining acts, to the detriment of third parties.

Nor have defendants offered any basis for differentiating between the 26-inch pipeline and the 30-inch pipeline in relation to their statutory obligation to avoid damage and disruption. As alleged in the Amended Complaint, and as explained more thoroughly in Peter Richards's Declaration, the two parallel pipelines operate in tandem to provide a sufficient volume of uninterrupted service to the more than nine million people who depend on Northwest's gas transmission system. A disaster that disables one of the pipelines would likely disable the other

and would, in any event, leave Northwest with inadequate transmission capacity to meet the demands of its customers.  *See* Richards Decl. ¶ 10.

### 2. Northwest Is Entitled to Maintain Its Common Law Claims Against Defendants Regardless of the Provisions of the 1983 Special Warranty Deed.

Defendants argue that the 1983 Special Warranty Deed entitled them to ignore all of the common law rights of their neighbor, Northwest.  They argue, in effect, that the 1983 Special Warranty Deed (1) entitled them to commit acts of public and private nuisance with impunity and (2) exempted them from the common law requirement to refrain from acts that would depriving their neighbor of lateral support.  This argument fails because all of defendants' rights under the 1983 Deed were explicitly made subject to Northwest's rights, which predated the 1983 Deed by eleven years.

Under the 1972 Deed, Northwest's predecessor obtained the right to utilize a 60-foot permanent easement for pipeline purposes.  Chevron's 1983 Special Warranty Deed was explicitly made subject to the 1972 Deed and all of Northwest's rights in the 60-foot easement.  And it is well-established that easement holders have rights to lateral support to the same extent that surface owners do.  *See, e.g.*, POWELL ON REAL PROPERTY § 63.04[1] (2011) ("A cause of action for a violation of the duty to supply lateral support exists in any persons having a possessory interest in, or a right to use, the supported land, who can prove that they have been damaged by a substantial subsidence of that land."); *San Jacinto Sand Co. v. Southwestern Bell Tel. Co.*, 426 S.W.2d 338, 345 (Tex. Civ. App. 1968) ("the owner of the dominant estate, the easement owner, is entitled to lateral and subjacent support for its easements, its lines and its property lawfully thereon[.]"); *East Ohio Gas Co. v. James Bros. Coal Co.*, 85 N.E.2d 816 (Ohio Ct. Comm. Pleas 1948) (enjoining mining operations by fee owner that would undermine lateral support for utility right-of-way).

Both of Northwest's pipelines are located within the 60-foot easement. Chevron therefore had the obligation to refrain from operations that would impair lateral support for the 60-foot easement. It clearly violated this obligation and is therefore liable for resulting damages.

Defendants argue that the original easement did not permit the addition of a second pipeline, but their argument fails for two reasons. First, it is not Chevron's argument to make. Chevron did not grant the easement, nor did any prior owner of the coal rights on the property. Rather, Northwest's predecessor obtained its easement from Union Pacific Land Resources, which was the fee owner of the property. As indicated by the 2004 Agreement appended to the motion, the current fee owner, Anadarko Land Corporation, granted Northwest the right to locate a second pipeline on an enlarged permanent easement overlaying the original 60-easement. To the extent there may be an argument that Northwest overburdened its easement, the argument would be for Anadarko to make, and not defendants.

Second, Chevron is strictly liable for damages caused by elimination of lateral support if it failed to maintain sufficient lateral support to sustain the land in its natural condition. POWELL ON REAL PROPERTY, § 63.01[5] (2011) ("The possessor of supporting land is strictly liable for providing that level of support to soil on nearby land that would exist if both parcels were in their natural condition."); *cf. also Bard Ranch Co. v. Weber*, 557 P.2d 722, 732 (Wyo. 1976) (relying on prior edition of POWELL in describing remedies for loss of lateral support). The Amended Complaint pleads sufficient facts to demonstrate that Chevron's destruction of lateral support was so significant that the entire area is now subject to landslide as soil saturation increases due to rainfall. Even if the land were in its natural condition (*i.e.*, no pipelines on the easement), the damage to the support structure caused by Chevron's mining of the Kemmerer mine's northern wall is so significant that the entire easement area would slide to the south and eventually collapse.

If a tortfeasor causes such injury to the lateral support of a property that the property would collapse even if no structure had been built on it, the tortfeasor becomes strictly liable for all damages caused, even if there are structures on the property. *See, e.g.*, *Gladin v. VonEngeln*, 575 P.2d 418, 421 (Colo. 1978) ("The application of strict liability should not be based upon whether the thing damaged is natural or artificial. Rather, the distinction must hinge upon whether an artificial condition created on the plaintiffs' land contributed to the injury, or whether the subsidence would have occurred even if the land had remained in its natural state."). Here, it is immaterial to Chevron's liability that there were two pipelines within the 60-foot easement granted in 1972. Chevron had a duty to refrain from mining activities that would eliminate lateral support for the 60-foot easement. The Amended Complaint pleads sufficient facts demonstrating that Chevron failed to fulfill that duty.

Finally, defendants' attempt to unscramble the damages relating to the two pipelines must be rejected at the pleading stage because the two pipelines are part of an integrated system. The operation of both pipelines is essential to the transmission of gas to Idaho and the Pacific Northwest. Damage to one of the pipelines disables the entire system. The common law of lateral support and nuisance protect the integrity of the pipeline system from surrounding mining operations. Chevron has been aware of the existence of both pipelines for many years, yet it continued operations on the north wall of the mine without regard to Northwest's rights. Chevron cannot now be protected from the consequences of its actions by claiming that it acted in reckless disregard of only one gas pipeline rather than two.

## **CONCLUSION**

Defendants' motion ignores Northwest's rights under the Federal Act and the Wyoming Act and under the common law. There is no legal basis under applicable statutes or under common law for separating defendants' liability for the damage Chevron caused or threatened to

the 26-inch pipeline from the damage it caused to the 30-inch pipeline. The Court should therefore deny defendants' motion.

DATED this 16th day of March, 2012.

*/s/ Paul J. Hickey*
Paul J. Hickey (WY# 5-1431)
HICKEY & EVANS, LLP
1800 Carey Ave., Suite 700
P.O. Drawer 467
Cheyenne, WY 82003-0467
Telephone: (307) 634-1525
Facsimile: (307) 638-7335
phickey@hickeyevans.com

Alan L. Sullivan (*Pro Hac Vice* Pending)
Jared C. Fields (*Pro Hac Vice* Pending)
Snell & Wilmer LLP
15 West South Temple, Suite 1200
Gateway Tower West
Salt Lake City, Utah 84101
Telephone: (801) 257-1900
Facsimile: (801) 257-1800
asullivan@swlaw.com
jfields@swlaw.com

**ATTORNEYS FOR PLAINTIFF
NORTHWEST PIPELINE GP**

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of March, 2012, I electronically filed the foregoing PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

| | |
|---|---|
| Robert C. Jarosh | Bobbee J. Musgrave |
| Kara L. Ellsbury | Steven J. Perfrement |
| Hirst Appelgate, LLP | Craig K. Schuenemann |
| 1720 Carey Avenue, Suite 400 | Bryan Cave HRO |
| P. O. Box 1083 | 1700 Lincoln Avenue, Suite 4100 |
| Cheyenne, WY  82003-1083 | Denver, Colorado 80203 |
| rjarosh@hirstapplegate.com | Bobbee.musgrave@bryancave.com |
| kellsbury@hirstapplegate.com | Steven.perfrement@bryancave.com |
| | Craig.scheunemann@bryancave.com |

*/s/ Linda Huckfeldt*
Hickey & Evans, LLP